TODD BLANCHE
Deputy Attorney General
BILAL A. ESSAYLI
First Assistant United States Attorney
IAN V. YANNIELLO
Assistant United States Attorney
Chief, National Security Division
DAVID C. LACHMAN (Cal. Bar No. 261711)
Assistant United States Attorney
National Security Division
     1500 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone: (213) 894-5564
     Facsimile: (213) 894-2927
     Email:    david.lachman@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. CR 2:25-00491-AH |
| Plaintiff, | GOVERNMENT'S SENTENCING POSITION |
| v. | Hearing Date: February 25, 2026<br>Hearing Time: 9:00 a.m. |
| WRACKKIE QUIOGUE, | Location:    Courtroom of the<br>             Hon. Anne Hwang |
| Defendant. | |

Plaintiff United States of America, by and through its counsel of record, the Deputy Attorney General, the First Assistant United States Attorney for the Central District of California, and Assistant United States Attorney David C. Lachman, hereby files its sentencing position for defendant Wrackkie QUIOGUE.

//

//

This sentencing position is based upon the attached memorandum of points and authorities, the files and records in this case, and such further evidence and argument as the Court may permit.

Dated: February 19, 2026          Respectfully submitted,

TODD BLANCHE
Deputy Attorney General

BILAL A. ESSAYLI
First Assistant United States Attorney

IAN V. YANNIELLO
Assistant United States Attorney
Chief, National Security Division

   /s/
DAVID C. LACHMAN
Assistant United States Attorney

Attorneys for Plaintiff
UNITED STATES OF AMERICA

**TABLE OF CONTENTS**

DESCRIPTION                                                                PAGE

TABLE OF AUTHORITIES..................................................i

MEMORANDUM OF POINTS AND AUTHORITIES..................................1

I.    INTRODUCTION....................................................1

II.   DEFENDANT'S CRIME...............................................2

III.  GUIDELINES CALCULATION..........................................4

IV.   GOVERNMENT'S RECOMMENDED SENTENCE...............................7

      A.    A Substantial Custodial Sentence is Appropriate
            Considering the Nature and Circumstances of the
            Offense...................................................7

      B.    History and Characteristics of Defendant, § 3553(a)(1)....8

      C.    Need for Deterrence, to Protect the Public, and to
            Promote Respect for the Law...............................9

      D.    Need for the Sentence to Avoid Unwarranted
            Disparities,.............................................10

V.    CONCLUSION.....................................................10

**TABLE OF AUTHORITIES**

DESCRIPTION                                                                        PAGE

**CASES**

Gall v. United States,
    552 U.S. 38 (2007)...........................................11

United States v. Barker,
    689 Fed. App'x 555 (9th Cir. 2017).............................5

United States v. Peterson,
    475 F.2d 806 (9th Cir. 1973)...................................5

United States v. Saeteurn,
    504 F.3d 1175 (9th Cir. 2007).................................11

United States v. Simmons,
    83 F.3d 686 (4th Cir. 1996)....................................6

United States v. Treadwell,
    593 F.3d 990 (9th Cir. 2010).................................11

**STATUTES**

18 U.S.C. § 232..................................................5

18 U.S.C. § 922..................................................7

26 U.S.C. § 5845...........................................4, 5, 7

26 U.S.C. § 5861.................................................1

**OTHER AUTHORITIES**

U.S.S.G. § 2K2.1...........................................4, 6, 7

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.   INTRODUCTION**

Defendant Wrackkie Quiogue ("defendant") joined a crowd of protesters that formed outside the Edward R. Roybal Federal Building (the "Roybal Federal Building") in downtown Los Angeles on June 8, 2025.  Unlike many of the individuals in the crowd, who were gathered to peacefully exercise their First Amendment rights and protest immigration enforcement operations, defendant came prepared to instigate violence and inflict harm on the law enforcement officers assigned to protect the Roybal Federal Building.  Several hours after Los Angeles Police Department ("LAPD") declared an unlawful assembly and various members of the crowd began resorting to violence, launching projectiles at the offers, LAPD officers spotted defendant in the crowd, holding a Molotov cocktail in one hand and a lighter in the other.  Fearing that he would light and throw the Molotov cocktail, LAPD officers approached defendant, who fled.  During the pursuit, defendant threw the unlit Molotov cocktail in the air.

Defendant's premeditated actions endangered the law enforcement officers protecting the Roybal Federal Building and the civilians who gathered to peacefully protest.  As a result of the timely intervention of LAPD officers, defendant was unable to light the Molotov cocktail, and no one was injured.  Defendant now awaits sentencing after pleading guilty to a single-count indictment for possessing an unregistered destructive device in violation of 26 U.S.C. § 5861(d).

The government disagrees with the U.S. Probation and Pretrial Services Office's ("Probation") Guidelines calculations in one important respect: because defendant possessed a destructive device,

which is a firearm described in 26 U.S.C. § 5845(a), and was a prohibited person at the time he committed the offense, the base offense level should be 20, not 14.  With this correction, the total offense level is 19, not 13, resulting in a Guidelines range of 37 to 46 months' imprisonment.  The government recommends a low-end Guidelines sentence of 37 months' imprisonment; a two-year term of supervised release; and a mandatory special assessment of $100.

**II.   DEFENDANT'S CRIME**

In early June 2025, federal law enforcement officials began conducting immigration enforcement operations throughout the greater Los Angeles area.  During and following those operations, protests occurred in and around the greater Los Angeles area.  While many of the protestors peacefully exercised their First Amendment rights, some individuals directly engaged in violent actions to obstruct, impede, or injure law enforcement officers.

One such protest formed on June 8, 2025, outside the Roybal Federal Building in downtown Los Angeles.  (Dkt. 1 ¶ 12(a).) Protestors arrived and confronted Federal Protective Services ("FPS") officers tasked with protecting employees and visitors to federal facilities.  LAPD officers responded to crowds and reports of civil disorder in the area near the Roybal Federal Building.  (Id.)  At approximately 1:30 p.m., unidentified individuals in the crowd began throwing objects, including rocks and bottles, at LAPD officers. (Id. ¶ 12(b).)  LAPD declared an unlawful assembly and gave orders for the crowd to disperse, but the crowd did not disperse.  (Id. ¶ 12(c).)  At approximately 4:15 p.m., an individual on a motorcycle drove into LAPD officers, injuring one officer.  (Id. ¶ 12(d).)

2

Other unidentified individuals in the crowd began launching projectiles and commercial grade fireworks at LAPD officers.  (Id.)

At approximately 5:00 p.m., an LAPD officer, who was stationed at the Roybal Federal Building to control the crowd, identified defendant manipulating an object in his hand, causing the LAPD officer to advise other officers to keep an eye on defendant.  (Id. ¶ 13(a).)  Shortly thereafter, an LAPD officer yelled "Molotov," pointing at defendant, who was holding a clear bottle with a yellow rag sticking out of it in his left hand.  (Id. ¶¶ 13(b), 14.)

Fearing that defendant would light the Molotov cocktail and throw it at the officers, LAPD officers approached defendant, causing him to attempt to flee.  (Id. ¶¶ 13(c), 14.)  As the LAPD officers pursued defendant, he threw the unlit Molotov cocktail into the air.  (Id.)  LAPD officers subdued and arrested defendant, who was holding a lighter in his right hand.  (Id. ¶¶ 13(c)-(d).)

A photogram of defendant holding the Molotov cocktail is depicted below:



On November 19, 2025, defendant entered a plea of guilty to the single-count indictment.  (Dkt. 24.) In the stipulated factual basis accompanying defendant's guilty plea, defendant admitted that he "knowingly possessed a destructive device," which "consisted of a breakable glass bottle, a flammable liquid (namely, ethanol), and a source of ignition (namely, a yellow piece of cloth soaked in ethanol, which acted as a wick)."  (Dkt. 23 at 2.)  Defendant further admitted that he "knew the device he possessed had these features, and thus knew that it was an incendiary bomb, grenade, or similar device," which defendant had not registered with the National Firearms Registration and Transfer Record.  (Id. at 2-3.)

**III. GUIDELINES CALCULATION**

The government disagrees with Probation's calculation of the applicable Guidelines range in one material respect.  Contrary to the Presentence Investigation Report ("PSR") (Dkt. 26 ¶ 16), the applicable base offense level should be 20 under U.S.S.G. §2K2.1(a)(4)(B), because (i) the offense involved a firearm described in 26 U.S.C. § 5845(a), namely, a destructive device, and (ii) defendant was a prohibited person at the time he committed the offense.  See U.S.S.G. § 2K2.1(a)(4)(B).

A base offense level of 20 applies if two conditions are met. First, the offense conduct must involve a "firearm that is described in 26 U.S.C. § 5845(a)."  U.S.S.G. § 2K2.1(a)(4)(B)(i)(II).  The statute defines the term "firearm" to include "a destructive device," 26 U.S.C. § 5845(a)(8), which means "any explosive, incendiary, or poison gas (A) bomb, (B) grenade, . . . or (F) similar device."  26 U.S.C. § 5845(f) (emphasis added).  The United States Code further defines the term "explosive or incendiary device" to mean:

> [A]ny incendiary bomb or grenade, fire bomb, or similar device, including any device which (i) consists of or includes a breakable container containing a flammable liquid or compound, and a wick composed of any material which, when ignited, is capable of ignited such flammable liquid or compound, and (ii) can be carried or thrown by one individual acting alone.

18 U.S.C. § 232(5).

A Molotov cocktail, like the one defendant possessed, clearly qualifies as a destructive device. To begin with, defendant himself admitted in the stipulated factual basis accompanying his guilty plea that he "knowingly possessed a destructive device." (Dkt. 23 at 2.) Moreover, a Molotov cocktail is an incendiary device made up of three parts: (1) a breakable container, (2) filled with a flammable liquid, and (3) a fuse or wick that can be used to ignite the flammable liquid. (Dkt. 1 ¶¶ 10, 18.) Every court to address this issue has concluded that a Molotov cocktail is a destructive device. See, e.g., United States v. Peterson, 475 F.2d 806, 811 (9th Cir. 1973) (a device "likened to a Molotov cocktail" satisfied definition as incendiary bomb, grenade, or similar device); United States v. Barker, 689 Fed. App'x 555 (9th Cir. 2017) (unpublished) ("A 'Molotov cocktail' is an incendiary device that is quite similar to a grenade."); see also United States v. Simmons, 83 F.3d 686 (4th Cir. 1996) (collecting cases universally finding that a flammable liquid in bottle with a wick -- a Molotov cocktail -- is a destructive device). A Molotov cocktail can easily be carried by an individual, and is typically lit and then thrown at the target. (Dkt. 1 ¶¶ 9-10.) A Molotov cocktail breaks on impact and the flammable liquid -- ignited by the wick or fuse -- quickly spreads the fire. (Id.) Injuries caused by Molotov cocktails can include severe burns (especially if an individual's clothing or other flammable item

nearby ignite), smoke inhalation, and other injuries caused by the breakable container (whether intact or broken).[1]

Second, for a base offense level of 20 to apply, defendant must have been a prohibited person at the time committed the instant offense. U.S.S.G. § 2K2.1(a)(4)(B)(ii)(I). This condition is also met. A prohibited person is any person "who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year." 18 U.S.C. § 922(g)(1). As set forth in the PSR, here, defendant previously had been convicted of two felony convictions – namely, taking a vehicle without the owner's consent and grand theft -- that were punishable by imprisonment for a term exceeding one year. (PSR ¶¶ 16, 37.) Because defendant possessed a destructive device while being a prohibited person, the base offense level is 20, not 14.

In addition, as set forth in the PSR, because defendant possessed a destructive device as defined by 26 U.S.C. § 5845(f), a further two-level enhancement applies. (PSR ¶¶ 17-18.) U.S.S.G. § 2K2.1(b)(3)(B).

Applying these adjustments, the total offense level, after a three-level reduction for timely acceptance of responsibility, is 19.

---

[1] Zeliha Yildrim and Cem Uysal, "The Effect of Various Molotov Cocktails on Different Surfaces and Evaluation of Fire Changes," International Archives of Medical Research, July 18, 2024, DOI: 10.56484/iamr.1439171, available at https://dergipark.org.tr/en/download/article-file/3737809 (last visited Feb. 12, 2026); Dionysios I. Kolaitis, "An experimental investigation of improvised incendiary devices used in urban riots: The 'Molotov cocktail,'" https://www.researchgate.net/publication/278962656_An_experimental_investigation_of_improvised_incendiary_devices_used_in_urban_riots_The_Molotov_cocktail (last visited Feb. 12 , 2026).

6

The table below shows the difference in the offense level computation between Probation and the government's positions.

|  | Probation | Government |
|---|---|---|
| Base Offense Level | 14 per U.S.S.G. § 2K2.1(a)(6) | 20 per U.S.S.G. § 2K2.1(a)(4) |
| A destructive device U.S.S.G. § 2K2.1(b)(3)(B) | +2 | +2 |
| Acceptance of responsibility U.S.S.G. § 3E1.1(a), (b) | -3 | -3 |
| **Total Offense Level** | **13** | **19** |

Defendant is in criminal history category III with four criminal history points. (PSR ¶¶ 40-41.) With a total offense level of 19 and a criminal history category of III, the government respectfully submits that the applicable Guidelines range is 37 to 46 months' imprisonment.

**IV.   GOVERNMENT'S RECOMMENDED SENTENCE**

The government recommends that the Court sentence defendant to a sentence at the low end of the correctly calculated Guidelines range: 37 months' imprisonment; a three-year term of supervised release; no fine; and a mandatory $100 special assessment. This sentence is appropriate, reasonable, and not greater than necessary to account for the factors the Court must consider under 18 U.S.C. § 3553(a).

**A.   A Substantial Custodial Sentence is Appropriate Considering the Nature and Circumstances of the Offense**

A substantial custodial sentence -- which the government's recommended sentence reflects -- is necessary to reflect the gravity of defendant's crime and the danger he posed to those around him. Possessing a destructive device, even a homemade Molotov cocktail, is a serious offense. That is why enhanced sentences apply to this type

7

of device in excess of those that apply to firearms generally.  See, e.g., 26 U.S.C. §§ 5845(f), 5861; U.S.S.G. § 2K2.1(b)(3)(B). However, defendant did not merely possess a destructive device at home; he took it to a political protest.  And the Molotov cocktail was not stored away in a backpack; defendant cradled it in his left hand while holding a functioning lighter in his right hand, watching and waiting for an opportunity to use it.  Fortunately, his plans were thwarted by the timely intervention of LAPD officers.

**B.   History and Characteristics of Defendant, § 3553(a)(1)**

The instant conviction will be defendant's seventh criminal conviction and his third felony conviction.  His criminal history is balanced against challenges defendant has faced and overcome.  He reports a "complicate and unstable" upbringing where, even while his basic needs were met, he witnessed physical and verbal abuse by his sisters' father from age five to twelve, eviction from his home, and two years in an orphanage.  (PSR ¶¶ 58-61.)  Defendant reports that beginning when he was 16, he became despondent, dropped out of school, started using drugs, and experienced periods of homelessness. (PSR ¶¶ 61-62.)  To his credit, defendant later found sobriety, cultivated a passion for cooking, and obtained employment at various well-known restaurants, and was living an independent and productive life up until his arrest for this offense.  (PSR ¶¶ 63-644.)

While sympathetic to defendant's struggles, the government agrees with Probation that no factors exist that would warrant a variance outside the Guidelines.  (PSR ¶ 103.)  As such, the government's recommended low-end Guidelines sentence correctly accounts for the serious nature of defendant's offenses.  A sentence at the low end of the applicable Guidelines correctly balances

defendant's history and characteristics with the nature and circumstances of the offense.

### C. Need for Deterrence, to Protect the Public, and to Promote Respect for the Law

Any sentence below the correctly calculated Guidelines range would undermine the sentence's deterrence value and will not promote respect for the law. Defendant did not choose to peacefully exercise his First Amendment rights to assemble and protest government actions with which he disagreed. He did not choose to have his voice heard, unlike many other protestors, who were carrying signs displaying their opinions. Instead, defendant armed himself with a destructive device, which he cradled in one hand with a lighter in the other, evincing the clear intent to light and throw the Molotov cocktail at the law enforcement officers tasked with protecting the Roybal Federal Building. This warrants a sentence that will deter defendant specifically, and others generally, from contemplating resorting to violence and endangering the public in times of civil disorder.

A substantial sentence would also promote respect for the law. The law draws a line that prohibits violent, dangerous conduct like defendant's -- bringing a destructive device to a political protest -- is necessary to protect the fundamental rights of others in the community who choose to demonstrate and protest lawfully. Defendant's conduct undermines those bedrock rights and endangers other protesters, as well as the law enforcement officers assembled to protect employees and visitors to the Roybal Federal Building. A below-Guidelines sentence would send a dangerous message that violent, anti-social behavior will be met with leniency. Such a sentence would undermine the rule of law and embolden others who may

be contemplating bringing homemade destructive devices to political protests. By contrast, a substantial custodial sentence would send the message that when someone crosses the line into unlawful conduct, especially when that conduct endangers members of the community, it will be met with significant consequences.

**D.   Need for the Sentence to Avoid Unwarranted Disparities**,

Section 3553(a)(6) requires the Court to minimize sentencing disparities among similarly situated defendants. One way of doing so is to correctly calculate the Guidelines range. See United States v. Treadwell, 593 F.3d 990, 1011 (9th Cir. 2010) ("Because the Guidelines range was correctly calculated, the district court was entitled to rely on the Guidelines range in determining that there was no 'unwarranted disparity' . . . ."); Gall v. United States, 552 U.S. 38, 54 (2007) ("[A]voidance of unwarranted disparities was clearly considered by the Sentencing Commission when setting the Guidelines ranges."). The best way to ensure consistent sentences for similarly situated defendants across courtrooms, districts, and the country is to apply the sentencing guidelines uniformly. United States v. Saeteurn, 504 F.3d 1175, 1181 (9th Cir. 2007). Here, under the correctly calculated Guidelines range, other defendants "with similar records who have been found guilty of similar conduct" as defendant can expect a sentence between 37 to 46 months' imprisonment.

**V.   CONCLUSION**

For the foregoing reasons, the Court should impose a sentence at the low end of the correctly calculated Guidelines range: 37 months' imprisonment; two years' supervised release; no fine; and a $100 special assessment.